# Williamson *et al. versus* McClure.

*Construction of Contracts.—Rights and Obligations of Creditor holding Collateral Securities.*

1. In construing a particular clause of an agreement, it is proper to consider the situation and relation of the parties, the subject-matter of the contract, and all the other provisions of the agreement.

2. Where a creditor holding collateral security, as a consideration for extension of time, accepts additional collaterals, which he agrees to prosecute to collection or insolvency, and to apply the proceeds as fast as collected to the extinguishment of the original debt, and to surrender and give up the same amount of the original collateral bonds—it is the duty of the debtor to demand the surrender of the bonds.

3. Without a demand on the creditor, or affording him an opportunity to surrender the bonds, he is not liable to the debtor for any depreciation of the bonds, during the time they remained in his possession after they might have been demanded.

[Williamson *et al. v.* McClure.]

ERROR to the Common Pleas of *Erie county.*

This was an action of *assumpsit* brought by Mahlon Williamson and Horatio N. Burroughs, partners doing business as Williamson & Burroughs, against John McClure, Jr.

To a *narr.* in *assumpsit* and a copy of claim filed, the defendant pleaded " payment with leave, &c." The case was this:

Williamson & Burroughs, the plaintiffs, held the bonds and certificates of indebtedness of the Erie Canal Company, amounting in the aggregate to $7675.26, the payment of which, by the company, upon the 1st day of January 1850, the defendant, John McClure, had guarantied. The canal company was not able to pay, and did not pay these bonds and certificates, or any of her bonds and certificates, upon the 1st day of January 1850, the day they were made payable. Upon the 28th day of January 1850, these guarantied bonds and certificates not being paid, McClure, being liable upon his guarantee, entered into the following agreement with the plaintiffs:—

" Whereas, Mahlon Williamson and Horatio N. Burroughs, of the city of Philadelphia, hold the bonds and certificates for the unpaid interest of the Erie Canal Company, amounting to, in the aggregate, on the 1st day of January, A. D. 1850, to the sum of $7675.26. And whereas, John McClure, Jr., of Girard, in the county of Erie, Pa., has guarantied the payment of the said sum of money due on said bonds and interest certificates to the said Williamson & Burroughs. And whereas, it is not convenient for the said McClure to pay said sum of money and the said Williamson & Burroughs are willing to extend the time of payment of said sum of money, in consideration whereof the said John McClure, Jr., hereby assigns, transfers, and sets over to the said Williamson & Burroughs five other bonds of the Erie Canal Company of $1000 each, which bonds are now in the hands of James C. Marshall, Esq., for collection. The ultimate payment of said bonds is guarantied by David Himrod and Joseph Woodworth by writing on said bonds, and which guarantee is secured by the mortgage of the said Himrod & Woodworth upon coal lands in the county of Mercer, which mortgage, together with all and every other security appertaining to the final payment of the said $5000 of canal bonds, is also hereby assigned, transferred, and set over to the said Williamson & Burroughs, by them to be prosecuted to final judgment and execution, and when and as fast as the said sum of money or any part thereof is collected, either from the said Erie Canal Company, the said Himrod & Woodworth, or the said mortgage, the same is to be applied on the said sum of $7675.26 due on the said McClure guarantee to the said Williamson & Burroughs as aforesaid.

" Also, the said John McClure, Jr., hereby assigns, transfers, and sets over unto the said Williamson & Burroughs two certain

[Williamson *et al. v.* McClure.]

judgments in favour of said McClure *v.* William H. Dariar in the Court of Common Pleas of Erie county : one No. 206, August Term 1845, real debt $600; the other numbered 137, August Term 1846, for real debt $2770.81, to be collected by the said Williamson & Burroughs, and appropriated towards the payment of the said $7675.26 as aforesaid. It is understood and agreed upon by the said Williamson & Burroughs that they are not to proceed against the said McClure on his said guarantee for the payment of the said sum of $7675.26 until the claim on the said David Himrod and Joseph Woodworth is pursued to the extent of the law, and they prove insolvent and the mortgaged premises prove insufficient to pay the same. And also, the said Williamson & Burroughs agree to pursue the said judgment against the said Dariar in the same manner, but subject to any agreement now existing between the said McClure and Dariar, as to terms of payment; and it is further agreed on the part and behalf of the said Williamson & Burroughs that as soon and as fast as they receive money on any or either of the securities aforesaid hereby assigned by the said McClure, the same shall apply to extinguish so much of the principal and interest of the said sum of $7675.26, and the said Williamson & Burroughs to surrender and give up to the said John McClure, Jr., the same amount of the said guarantied bonds and interest certificates of the Erie Canal Co., as the amount of money so received from the securities hereby assigned, from time to time, as fast as said money may be received, and as soon as the said Williamson & Burroughs receives the full amount of $7675.26 with the lawful interest thereon from the 1st day of January, A. D. 1850, then they are to deliver up to the said John McClure the balance of all securities of every description thus placed in their hands for the payment of said last-mentioned sum of money over and above the payment thereof. And the said John McClure, Jr., hereby guaranties the ultimate collection of the sum of $7675.26 with lawful interest thereon from the above-named securities, any delay in the collection of the above securities not to affect the liability of said McClure upon his guarantee unless the delay is at the direction of Williamson & Burroughs without the consent of said McClure given in writing.

" In testimony whereof the said parties have hereunto set their hands this 28th day of January, A. D. 1850.

" JOHN MCCLURE,
" WILLIAMSON & BURROUGHS,
" By JOHN R. BOSTICK."

After this agreement was entered into, and the securities thereon mentioned were placed in the hands of Williamson & Burroughs, they, from time to time, between July 1st 1852, and

[Williamson *et al. v.* McClure.]

March 24th 1856, collected the $5000, with its interest, guaranttied by Himrod & Woodworth, and $1005 upon the judgments against Dariar. They also collected, from the canal company, all the interest paid upon the $7675.26, bonds and certificates the defendant had guarantied. These sums, in the aggregate, amounted to $8639.05. The time and amount of these payments the plaintiffs knew, but the defendant did not. Williamson & Burroughs having collected the $5000 and its interest guarantied by Himrod & Woodworth—the $1005 from Dariar and all the interest paid by the canal company on the paper the defendant had guarantied, amounting in the aggregate to $8639.05, brought this suit for about $2000 that they allege is yet due them after allowing all payments made.

The defence in the court below was, that defendant was not in any way indebted to the plaintiffs, but that they were indebted to him ; for which he demanded a certificate in his favour from the jury. This defence was based on the agreement of January 28th 1850—the payments in pursuance thereof, and the neglect and failure of the plaintiffs to " surrender and give up" to him an amount of canal bonds and certificates guarantied by him equal to the amounts collected, from time to time, by them from Himrod & Woodworth, Dariar, and others; and the depreciation of the bonds and certificates between the time they should have been " surrendered and given up," and the time of trial.

In the course of the trial, the defendant called a witness (C. M. Reed) to prove the value of Erie Canal bonds and certificates in 1851, and afterwards ; which was objected to by plaintiffs, but admitted by the court under exception.

The plaintiffs requested the court to charge the jury as follows :—

1st. If the jury believe from the evidence that the defendant was, on the 1st day of January, A. D. 1850, indebted to the plaintiffs in the sum of $7675.26, and that afterwards, to wit, on the 28th day of January, A. D. 1850, the said defendant assigned to the plaintiffs claims against David Himrod and Joseph Woodworth for $5000, and against W. H. Dariar for $3300 as collateral security for the payment of said debt of $7675.26, with an agreement that the money received from the said securities, should be applied *pro tanto* to the extinguishment of said principal debt, and that the plaintiffs have so applied all the money received from the said securities, and that the securities are and were before the commencement of this action fully exhausted, the plaintiffs are entitled to a verdict for the entire balance of said original debt after deducting such payments.

2d. The defendant is not entitled to a credit upon the said debt, for the value of canal bonds equal to the several amounts paid plaintiffs from said securities in consequence of not de-

[Williamson *et al. v.* McClure.]

livering to defendant an equal amount of the bonds held by plaintiffs.

3d. If the jury believe from the evidence that there was no market value for Erie Canal bonds, and that plaintiffs by the terms of their contract with defendant, were required to surrender an amount in bonds equal to the payments from time to time on said debt, and the defendant at no time requested a surrender of any part of said bonds, defendant is not entitled to an allowance in this case.

4th. The court is requested to charge the jury (inasmuch as there is no evidence whatever that defendant at any time demanded or requested of plaintiffs to deliver him any of said canal bonds), that defendant cannot charge the plaintiffs with the consequences of not having surrendered *what* he never thought it worth while to ask for. Williamson & Burroughs were not bound to hand over the bonds when payments were made, unless they were asked for; and if, by the tacit consent of both parties, payments were made, without any bonds ever being returned or asked for, the plaintiffs are not responsible under such circumstances to the defendant for the value of the bonds equal to the amount of the several payments or any part thereof.

5th. If the plaintiffs, by the terms of their contract with defendant, are in law bound to deliver an equal amount of bonds to the amount received by them on the securities in their hands, they are not required to give up said bonds any faster nor in any greater amount than the money actually received from said securities.

6th. The taking of a bond from David Himrod in June 1851 for the amount due on the Erie Canal Bonds guarantied by him, was no satisfaction of the amount due from Himrod to McClure, consequently McClure is not entitled to a credit until the money is actually paid, there being no evidence of any loss sustained by said McClure in consequence of the taking of said bonds.

7th. If the jury believe from the evidence that plaintiffs' attorney took the bond of David Himrod as adjusting the amount due upon the guarantee of Himrod & Woodworth, and retained said guarantied bonds until the final payment of said bond of David Himrod, and not in full discharge of said guarantee, the defendant is not entitled to a credit for the amount of said bond or sum of $5000 any faster than actually paid by said Himrod. Defendant being a witness to said bond is evidence that he consented to the arrangement with Himrod.

8th. If the jury believe from the evidence that defendant was the purchaser of the real estate of Dariar, sold upon one of the judgments assigned by defendant to plaintiffs, and did not pay the money over upon his bid until the 20th day of March 1856, he is not entitled to a credit upon said debt until the date of the payment of the money to the sheriff.

[Williamson *et al. v.* McClure.]

In answer to the plaintiffs' first, second, third, and fourth points, the court below charged, in substance, that plaintiffs, having retained the securities contrary to their agreement, as they received the payment, they must " account to defendant for their value as of the different dates when. payments were made to them on the other securities," and were not to be excused by reason of the omission on the part of the defendant to demand or request their delivery to him.

The remaining points of plaintiffs were answered in the affirmative.

Under this charge the jury found for defendant, and certified a balance in his favour of $1578.80, which, by calculation of counsel, was corrected and reduced to $1340.32, for which sum judgment was entered.

The plaintiffs then sued out this writ, and assigned for error :—

1. The admission of Reed to prove the value of Erie Canal bonds, in 1851 and after ; and

2. The negative answers given to the plaintiffs' first, second, third, and fourth points.

*James C. Marshall,* for plaintiffs.—1. The plaintiffs were not bound to surrender up to defendant an amount of guarantied bonds and certificates of the Erie Canal, equal to the several sums of money received by them, without *demand or request.* This was the spirit of their agreement. They were not bound to seek him for this purpose. Nor can he charge them with their value, without proof of a demand and refusal.

The construction of contracts must be reasonable, and the intention of the parties must govern : 2 Burr. 1108 ; 1 Peters 193 ; Chitty on Con. 19 ; Barrett *v.* Pritchard, 2 Peck 515 ; Denis *v.* Bassler, 1 Penn. Rep. 224 ; Gray *v.* Clark, 11 Vern. Rep. 583 ; Kelly *v.* Miles, 8 Harris 325 ; Patrick *v.* Grant, 2 Shep. 233 ; Worrall's Appeal, 5 W. & S. 111. These cases sustain plaintiffs' construction of the contract.

2. Collateral securities given by a debtor are considered as trusts for the better security of the creditor's debt: 4 Kent's Com. 308 ; Maure *v.* Harrison, 1 Eq. Cas. Ab. 93 ; Wright *v.* Morely, 11 Vesey 12 ; New London Bank *v.* Lee, 11 Conn. R. 112.  A trustee must be put in the wrong, by a demand and refusal before suit brought: Sears *v.* Patrick, 23 Wend. 528 ; 6 Hill 540 ; 6 Johns. Ch. 353, 358 ; Chitty on Con. 733, note. So, if no time or place be named for performing contract: 2 Kent's Com. 505, 507 ; 1 Walker Miss. Rep. 24 ; Hamilton *v.* Calhoun, 2 Watts 139.

*Cutler* and *Walker,* for defendant.—The contract did not require a demand for the securities; the duty of delivering them

up was on the plaintiffs, as a careful examination of the contract will show. "Surrender and give up" does not imply a previous request.

The opinion of the court was delivered, January 7th 1861, by WOODWARD, J.—The plaintiffs insist that they were not bound to surrender portions of the guarantied bonds in response to payments received from the collaterals assigned to them, unless the defendant first requested or demanded such surrender. The defendant, on the other hand, maintains that their agreement was absolute to surrender as fast as payments were made, and that by failing to do so, the plaintiffs made themselves liable to him for the bonds. The court adopted this view, and the result was a verdict against the plaintiffs for $1340.32.

The construction of the agreement of the 28th January 1850, is the question in the cause. And in order to get at the true meaning of the particular clause in controversy, we must advert to the situation and relation of the parties, the subject-matter of their agreement, and all the other provisions of the instrument. It is a true rule of construction, said Lord Ellenborough, in Barton *v.* Fitzgerald, 15 East 541, that the sense and meaning of the parties in any particular part of an instrument, may be collected *ex antecedentibus et consequentibus*, that every part of it may be brought into action, in order to collect from the whole one uniform and consistent sense, if that may be done.

In Paley's Moral and Political Philosophy, p. 104, we have the following rule: "Where the terms of the promise admit of more senses than one, the promise is to be performed in that sense in which the promissor apprehended at the time the promissee received it." That this is as good in law as in ethics, may be seen by the application which was made of it in Potter *v.* The Insurance Company, 5 Hill 147.

If, from a consideration of the whole agreement, it is a fair and reasonable deduction that the plaintiffs, who were the promissors in the clause in question, apprehended, at the time the agreement was made, that McClure received their promise as binding them to look him up and surrender portions of the guarantied bonds as often as a payment was received on the assigned collaterals, without request or demand on his part, then the construction of the court below is right. But if such a deduction from the whole instrument be not reasonable, if the proper construction be that the duty to surrender and give up was understood as depending on a previous demand, then we find nothing in the words employed to exclude the idea of a previous demand. The act of surrendering and giving up may be in pursuance of an *à priori* obligation simply, or in obedience to a present demand founded on such prior obligation. The instrument does

not expressly stipulate for a demand, but if in legal judgment such was the understanding of the parties, the agreement is to be administered precisely as if such stipulation were expressed. The very idea of construction implies a previous uncertainty as to the meaning of the contract, for when the meaning is clear and unambiguous, there is nothing for construction to do. A court will not, by construction, defeat the express stipulations of the parties, nor interpolate a condition that was not in their thought or intention, but they will so construe the words of the parties that they shall have, if possible, the very effect intended.

With these principles kept steadily in view, we have gone several times over this contract, and have come to the conclusion that it does not mean that Williamson & Burroughs were to surrender the guarantied bonds without demand, but only on demand. The considerations which have had most weight in bringing us to this result shall be stated as briefly as possible.

The parties to the agreement sustained the relation of debtor and creditor. When this relation was first established we are not informed, but at the date of the agreement the plaintiffs held McClure's guarantee of bonds and certificates for the unpaid interest of the Erie Canal Company to the amount of $7675.26, and the time for making the guarantee good had run out. On that day, therefore, they were entitled to demand and have this large sum of money. But McClure had not wherewith to pay. In the language of the agreement it was not "convenient" for him to pay. He wanted an extension of credit, and the agreement was founded on this want. It was an act of clemency and favour by a creditor to a debtor. But not only was the time of payment extended at the instance of the debtor, but the plaintiffs took from him a transfer of other securities, and agreed to pursue them to collection, and bound themselves not to proceed against him either on his original indebtedness or his guarantee of the collaterals until they had exhausted their legal remedies on the collaterals. It was, therefore, an indefinite extension of credit to the debtor, and an undertaking by the plaintiffs to make their money out of such securities as he chose to assign to them, instead of attempting to make it out of himself. And for all this no compensation or reward was provided for them in any form whatever, no bonus, no fee for collection, no compounding of interest, or payment of back interest; all they got was an increase of securities from a debtor who was not shown to be in failing or even doubtful circumstances, but to whom it was simply "*inconvenient*" to pay presently. And the assigned securities were in Erie and Mercer counties, whilst the plaintiffs resided in Philadelphia—four hundred miles and more from the place where the collections were to be made and where the debtor resided. Nor is there any imputation of neglect or delay in pursuing the collaterals. For some five years,

[Williamson *et al. v.* McClure.]

it would seem from the statement of counsel, the plaintiffs were engaged in pursuing the collaterals, and collected $5000 in various sums from Himrod & Woodworth, but could make out of a sale of Dariar's estate only $1005, which sum was paid to them by the defendant himself, who seems to have been the purchaser at the sheriff's sale. These sums, applied to McClure's original indebtedness, left a balance due the plaintiffs of about $2000, as they claimed, and for which they brought this suit. Instead of recovering the balance however, the verdict, under the court's construction of that clause of the agreement that relates to the surrender of the bonds originally guarantied, was, as before stated, in favour of the defendant for $1340.32.

Thus the relation of debtor and creditor still subsists between the parties, but they have changed places. A contract made at the instance and for the benefit of McClure, for an extension of credit and the collection of collaterals, is so construed in respect to an incidental stipulation as to extinguish his indebtedness without paying it, and to make him the creditor of his creditors. Such a result does sometimes happen from neglect or a misuse of collaterals on the part of a creditor. By taking collaterals he becomes bound to use due diligence in pursuing and collecting them, and if guilty of neglect, may make himself chargeable to the debtor, even beyond the amount of the original indebtedness. But such is not this case. It is not suggested that the plaintiffs could have made a dollar out of the collaterals which they did not make, nor that they failed to apply in good faith every dollar that was made. Having exhausted them, and having waited on the defendant till the process of exhaustion is complete, how does it happen that instead of being entitled to receive the balance of their debt at his hands, they find themselves metamorphosed into debtors to him? Simply by a very rigid construction of the following words of the agreement: "*And the said Williamson & Burroughs agree to surrender and give up to the said John McClure, Jr., the same amount of the said guarantied bonds and interest certificates of the Erie Canal Co., as the amount of money so received from the securities hereby assigned from time to time, as fast as said money may be received.*"

Now we conceive it unreasonable to suppose that the creditors were expected to go to Girard township, Erie county, to surrender one or more of the bonds, whenever a payment came in. The defendant was entitled to a surrender, but he was to place himself in a position to receive it. Every security is to be surrendered and given up when a debt is paid, but is not a debtor to demand it, or at least to give the creditor a chance to perform his duty without expense and trouble to himself? It is argued that when a party undertakes to perform an act in discharge of a promise, he is an actor, and to discharge his obligation he must perform or

[Williamson *et al. v.* McClure.]

tender performance at the time and place stipulated. There is a class of contracts to which this doctrine is applicable, as where a debt is to be paid at a particular place or in specific articles, but in such cases the performance stipulated for is a substantive part of the contract—is indeed the subject-matter of the contract to which the consideration directly applies. Here, however, the payment of McClure's debt by means of collaterals, was the subject-matter of the contract, and the surrender of the bonds was merely an incident, and not the purpose for which the contract was made.

Another reason urged why McClure was not to demand a surrender was that the plaintiffs would have knowledge of the payments and he would not. Doubtless a little diligence was necessary to keep him informed of the progress of collections, but we hold he was bound to that diligence, not only by the whole spirit and purpose of the agreement, but by the specific fact that he was the guarantor of every security the plaintiffs held.

There are, however, two more general and comprehensive answers to the construction placed on the agreement by the court below, which I proceed now to state.

The first is drawn from the concluding clause of the agreement, wherein McClure " *guaranties the ultimate collection of the sum of $7675.26, with lawful interest thereon, from the above-named securities.*" The amount here mentioned is the whole original indebtedness with the interest thereon. And here is a positive engagement by McClure that the collaterals he assigned should pay that entire debt. This is part of the same instrument in which they promised to surrender bonds to him. Now by what logic or law are the plaintiffs to be held to a strict performance of a mere incidental duty, and McClure is not to be held to make good that express guarantee? The collaterals did not, with due diligence, pay the entire debt. He promised they should. If they had done so, he might with some show of reason complain of the plaintiffs for not surrendering bonds unasked, but so long as he stands responsible for that broken promise, he is not entitled to set up the agreement as a defence against his original indebtedness. The plaintiffs' case rests on the original indebtedness. The defendant relies on their breach of the agreement. On our construction of the paper we see no breach on the part of the plaintiffs, but if our construction be not sound, and the breach be established, then the case discloses a breach also on the part of the defendant and in a particular which covers the whole claim of the plaintiffs. We conclude, therefore, that the agreement, however the clause about surrender be construed, is no defence for the defendant.

Again. It was shown that the Erie Canal bonds had no market value. Gen. Reed was the only purchaser, and the prices he

[Williamson *et al. v.* McClure.]

paid ran down from 45 to 20 cents in the dollar during the time this agreement subsisted between the parties.

Now McClure, standing as the guarantor of those bonds, was bound to be active if he wished to avert the consequences of a falling market. They were his bonds—pledged for his debt and redeemable only by actual payment of his debt. He saw them declining, yet neither hastened his payments nor demanded a partial surrender in response to partial payments. As guarantor and owner, the ultimate loss must fall on him.

But how did the decline in the value of the bonds affect the plaintiffs ? They were to surrender as fast as they received payments. Such was their agreement on the 28th of January 1850. Every surrender they would have made under this stipulation would have impaired their security beyond the intent of the agreement, because the residue remaining in their hands were growing less valuable continually. Besides, a difficulty in ascertaining the amount to be surrendered would have arisen, not only out of the declining value of the bonds, but out of the denomination of them. The only denomination mentioned in our paper-books is $1000, and if we are to assume that they were all of that size, how were they to be proportioned to the amounts of the several payments that were coming in for five years ? We do not suppose that each of these payments was exactly $1000. The last one made by McClure himself certainly was not, for it was $1005. How were those inequalities to be adjusted ?

We would say that it would be reasonable for a debtor and guarantor in such circumstances to call on his creditor and make an equitable adjustment of the amount of bonds to be surrendered from time to time, and that, failing to perform this duty he has no reason to complain that creditors, so distant and so indulgent as these plaintiffs, have not done more than it was their duty to do.

For these reasons we think the learned judge gave too rigorous a construction of the one clause of the agreement, and that he lost sight of the other parts, which do necessarily modify the construction of the promise to surrender. The words of that clause would, if taken alone, bear the construction placed upon them, but the parties did not place them alone, but connected them with other essential provisions, and we must read them as they wrote them, and give them the effect, but no more than the effect, which they intended they should have.

When the defendant demands of the plaintiffs an amount of bonds that shall correspond with the payments that have been made, he will be entitled to receive them, and when he pays off the balance of the plaintiffs' debt, he will entitle himself to a

[Williamson *et al. v.* McClure.]

surrender of all the bonds, and the court should compel them to deposit them in court for his use before taking out the moneys due to them.

The judgment is reversed, and a *venire facias de novo* awarded.