Frazier *et al. versus* Monroe *et al.*

1. Monroe sold a mill to Frazier, leaving stock in it temporarily; he assigned policies on the mill and stock to Frazier, who agreed in case the mill and stock should be burned, to give Monroe $3000 he might receive from the insurance: afterwards the mill and Monroe's stock in it were burned; Frazier received $493 for stock, $4137 for mill.  *Held*, that he was liable to Monroe for $2500, the value of his stock.

2. A contract so ambiguous as to require interpretation, may be considered in the light of the circumstances at the time to ascertain the parties' meaning.

3. Words or sentences not in the contract cannot be considered as there.

4. This can be done only under the equitable head of fraud, accident or mistake; this is reformation, not interpretation.

October 10th 1872.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 108, to October and November Term 1871.

This was an action of assumpsit brought January 5th 1870, by Robert Monroe and William Monroe, partners as R. Monroe & Co., against John Frazier and others, partners as Frazier Brothers.

The plaintiffs on the 15th of April 1869, sold to the defendants the " Star Planing Mill," in Allegheny City, the plaintiffs leaving in the mill temporarily a stock of lumber and some finished and unfinished work; the plaintiffs assigned to the defendants some policies of insurance against loss by fire on the real estate and also on the stock.

The defendants afterwards signed this paper:—

"Allegheny City, April 24th 1869.

We hereby agree to give R. Monroe & Co. (in case of fire taking place at the Star Planing Mill, and that their stock now in the mill should be burned or damaged) the sum of three thousand dollars, that we may receive from the several insurance companies, which was transferred by them to us on April 15th 1869.

FRAZIER  BROTHERS."

On the 24th of June 1869, the mill was burned, together with the stock then in it belonging to the plaintiff.   The plaintiffs' affidavit of claim averred the agreement and the burning: that their stock burned was of the value of $5000, and that the defendants had received $7000 on the policies from the insurances.

The affidavit of defence amongst other things averred that at the

time of signing the agreement, it was expressly understood that the lumber, &c., was to be removed by the plaintiffs from the mill in fifteen days; that before the fire the policies which were assigned had expired so far as plaintiffs' interest was concerned, and that the defendants were no longer carrying any risk for the plaintiffs.

The case was tried January 30th 1871, before Collier, J.

The plaintiffs gave evidence to sustain the allegation in their affidavit of claim; also, that they had transferred to defendants, policies of insurance on stock and real estate in a number of companies, amounting to $12,500, with evidence of the value of the stock burned.

The defendants gave evidence that the plaintiffs had transferred to them two policies in the Lycoming Insurance Company which they changed into one, for $5000. Of this $500 only were on personal property; they received $4137 on account of the insurance, $413 was for personal property, the remainder for mill and machinery. The assessments which had accrued on the policies were deducted from the $5000 due on the policies. On their objecting to sign the agreement, plaintiffs said it did not matter much, they would have their stock out in a few days, that the defendants would not be responsible longer than May, and with that understanding the paper was signed: they wrote to the plaintiffs that all their insurances were out, plaintiffs said they would run the risk themselves. Defendants gave evidence also of the value of the stock burned, tending to show that it was of less value than plaintiffs alleged.

The defendants submitted the following points which were refused:—

2. The paper on which suit is brought amounts to nothing more than an agreement by defendants to pay plaintiffs any money which they might receive for loss of plaintiffs' stock in the mill by a burning, on or before the defendants would be assessed, and as the uncontradicted evidence shows that the burning took place on the 29th June 1869, after the assessment made upon plaintiffs had run out, the plaintiffs are not entitled to recover.

4. By the paper in question the Messrs. Frazier could only be reached by an action for money had and received, and that to the extent only of the money, if any, received by them for and on account of insurance upon plaintiffs' stock.

5. The uncontradicted evidence shows that at the time of the fire there was but one insurance policy alive which applied or could apply to the plaintiffs' stock, to wit, that issued by the Lycoming Co. for $5000, of which $500 was applicable to the stock, all the other policies covering plaintiffs' stock, and which were in life at the time defendants gave the paper on which this suit is founded, having expired before the fire took place; and as it was not incumbent on the defendants to keep alive the policies

which had so expired, whether covering mill or stock, it matters not for the purposes of this case what the actual loss of plaintiffs at the fire was, provided it was five hundred dollars and upwards, as in no event can the plaintiffs (if entitled under the facts to recover at all) recover more than $500, with interest from the date of the fire.

The court charged also :—

"If the jury should find for the plaintiffs, the defendants would be liable to the extent of the loss sustained, which they would be bound to pay out of any moneys received by them on the policies transferred, whether the same was received from insurance on stock, or real estate."

The verdict was for the plaintiffs for $2500. The defendants took a writ of error, and assigned for error the refusal of their points and the charge.

*C. Robb* and *S. A. Purviance*, for plaintiffs in error.—In the view which the court took of the writing, it was a matter of no importance whether the insurances covering the stock had run out or not, nor was the remissness of the Monroes, in paying assessments to keep the policies alive, of any account. The evidence of the Fraziers and others, that the Monroes were to take the stock away before the fire occurred, was also wholly ignored by the court. Of all the moneys received by the Messrs. Frazier, only $413 was received on stock from the Lycoming Insurance Company. The plainest implication here takes the place of the writing, and supplies the ellipsis and makes the contract read, burned or damaged to the extent of three thousand dollars.

As a general assignment of the policies had been made, the Monroes only desired something to show that the policy covering stock was reserved, and a paper stating that the assignment of the policies was not to include that which covered stock, would have more fully expressed the meaning and intention of the parties.

*M. W. Acheson* and *Miller & McBride*, for defendants in error.—The language employed by the parties in the paper is unambiguous. In express terms the writing embraces all the transferred policies, without exception or distinction. To the extent of $3000 Monroe & Co. were to be protected.

A contract is to be construed by the words in which it is written : White *v.* Smith, 9 Casey 186.

The words of a contract are to be taken most strongly against the party using them.

But were the agreement unreasonable, it is nevertheless to be enforced according to the intention of the parties, as clearly and plainly expressed in the writing : Nelson *v.* Von Bonnhorst, 5 Casey 352.

[Frazier *v.* Monroe.]

The opinion of the court was delivered, October 17th 1872, by Thompson, C. J.—An express contract between parties so ambiguous in its terms as to require interpretation, may, in order to arrive at what they meant, be considered in the light of the surrounding circumstances at the time. This often enables courts to declare the meaning of contracts, but they are not allowed to add words, or to consider words and sentences to be in, that are not there. This can only be done on the principle of reforming contracts on account of omissions or improper insertions, under the equitable head of fraud, accident or mistake. That is not interpretation, it is reformation. Where nothing is alleged to be omitted or too much is not alleged to be embraced, it is a pure case of interpretation, and that is to be done under well-defined rules of law. In the case before us the contract is plain as to the point under consideration. It is that if the plaintiff's lumber, on which he had about $2000 insurance, was destroyed by fire, the defendants were to pay him out of all the policies assigned to them by plaintiff on the transfer of the mill, amounting to some nine or ten thousand dollars, the agreed sum of $3000. The argument is that this is an unreasonable construction. It may be so, and would have been so undoubtedly if the destruction of the property could have been foreseen. But it was not, and it is not unlikely that the defendants were liberal or careless in these premises in view of the supposed remoteness of the contingency in which they were made, happening. However this may have been, we see not how the court below could have given any other interpretation to the contract than it did.

Judgment affirmed.