Opinion by
Orlady, J.,
The plaintiff is the owner of a farm in Chester county on which he has lived for over forty years, and through which the defendant railway company built an extension of its original railway so as to traverse his farm for a distance of about one mile, the grant being to the defendant, and “its successors and assigns the right, liberty and privilege of constructing, operating and maintaining a railway through and over said tract of land” upon a location designated in the agreement; which privilege was granted solely upon the conditions specified in a writing signed by the plaintiff, which contained a number of stipulations in regard to the construction and operation of the road, but the one involved in this controversy relates exclusively to the consideration for the contract, as follows: “That the said William P. Thatcher shall be furnished with four annual tickets, upon the payment by him of one cent yearly; which tickets shall entitle them to ride in the cars operated over the proposed electric railway owned and operated, or may be owned and operated by the party of the second part so long as the title to the property shall remain in the party of the first part, the said William P. Thatcher to designate on or before the first of each year to whom the remaining three annual tickets shall be issued for that year.” The plaintiff contends that the contract means that he should have four annual tickets, issued to parties designated by him, over the whole of the defendant’s system of electric railway as it was in operation and contemplation at the date of the contract signed by him. The defendant claims that these four tickets should be limited to the branch or extension of the railway between Lenape and Kennett Square, as this was the “proposed electric railway” which passed through the plaintiff’s premises. The latter view was taken by the court, and the verdict, which had been rendered in the plaintiff’s favor, was set aside and judgment entered in favor of the defendant.
As an aid to the construction of the contract, we must consider the situation of the contracting parties. The West Ches *618 ter Street Railway Company was chartered in 1890, and in 1893 had completed its street railway in the borough of West Chester, and also an extension about four miles in length from West Chester to Lenape. Ten years after the completion of this branch, the company proceeded to secure rights of way for the construction of an extension of its railway from Lenape to Kennett Square, and other extensions to Coatesville, Downingtown; etc. The plaintiff’s land being in its line of survey, necessitated a contract with him for a right to pass over his land and occupy it. The distance from Kennett Square to Lenape was about six miles, from Lenape to West Chester three and one-half miles, and from West Chester to Downing-town about nine miles. The plaintiff and his family had frequent occasion to travel to and from West Chester, where some members of the family attended school, and where their general family business was transacted. Representatives of the company had a number of interviews on the premises with the plaintiff at which time, as shown by the testimony, the location of the road was determined, the system of the railroads then constructed, and to be, constructed was explained to the .plaintiff by the description given in the mortgage on record on the defendant’s property, which was admitted in evidence, in connection with the plaintiff’s testimony, in order to shed light on whatever information he had as to the roads the company contemplated building, which mortgage recited by special description, the railways in the borough of West Chester; the extension to Lenape; the extension from Lenape, to Kennett Square and Unionville; the extension to Downingtown, and also to Coatesville and Parksburg. It is conceded that the free transportation for four members of his family over the defendant railway was the sole inducement for his signing the contract; however, the contract must speak for itself, the interpretation being purely a matter of law. It does not contain any ambiguous words, the only difficulty in the case being the application of the description mentioned in the contract to the subject-matter, namely, the property of the defendant. If, as contended for by the defendant, the transportation were to be limited to the Kennett Square and Lenape branch, the *619 plaintiff paying fares to the town of West Chester, it would seem to be out of all proportion to the consideration passing to the railroad company, viz.: the right to construct and forever maintain its railway for one mile through the plaintiff’s farm. When the road was completed through the plaintiff’s premises in July, 1904, the president of the defendant company issued orders or passes for transportation, over the West Chester Railway Company to four designated members of the plaintiff’s family, which entitled the holders to passage over the whole system then in operation (as described in the general corporation mortgage) until December 31, 1904. With the beginning of 1905, annual transportation was tendered by the defendant to the plaintiff and four members of his family, but limited by the words, “on account contract between Lenape and Kennett Square until December 31, 1905,” a similar issue being tendered for 1906. These passes were used as far as they were accepted by the company, and regular fare being paid for the remaining distance to West Chester, which fares aggregated the amount of the verdict returned by the jury. It has been frequently held that the surrounding circumstances at the time the contract was made may be considered to arrive at what the parties meant: Frazier v. Monroe, 72 Pa. 166. And in giving an interpretation to a contract, when it is capable of two interpretations, that which the parties themselves put upon it will be followed' as being the true intent and meaning of the parties by their own construction of its terms: Gass's Appeal, 73 Pa. 39. The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the party in regard to which they have negotiated are all elements in the interpretation of an ambiguous contract: Lacy v. Green, 84 Pa. 514. Where the terms of the promise admit of more senses than one, the promises are to be performed in that sense in which the promisor apprehended at the time the promisee received it. That this is as good in law as in ethics may be shown by the application which was made of it in Potter v. Insurance Co., 5 Hill, 147; Williamson v. McClure, 37 Pa. 402. The circumstances surrounding the par *620 ties when the contract was made, and affecting the subject to which it relates form a sort of cqntext that may be resorted to in doubtful cases to aid in arriving at the meaning of the contract: Bole v. Insurance Company, 159 Pa. 53; McKeesport Machine Co. v. Insurance Co., 173 Pa. 53; Moore v. Insurance Co., 199 Pa. 49. When we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it as evidenced by their course of dealing under it: People’s Nat. Gas Co. v. Wire Co., 155 Pa. 22; St. Clair School District v. Water Co., 166 Pa. 81. While the matter was yet fresh in the minds of the parties who made the contract, the president and other officials, being on the ground and knowing all the facts, issued the cards for transportation “in the cars operated over the proposed electric railway, owned and operated or may be owned and operated ” by the defendant, which was in strict accord with the common sense and natural interpretation of the words of the contract, and which was then well known to be the sole, and a reasonable inducement of the plaintiff in surrendering to the company the right of way over his land. About the expiration of this first year, a change in the management of the company occurred, and new minds were applied to the interpretation of the plain letter of the contract, without the knowledge or in defiance of the circumstances attending its execution, which resulted in a restricted interpretation. To accept the view urged by the zealous counsel of the defendant would imply either that the plaintiff had been unduly credulous, or that he had been imposed upon by the officers of the company, which, in the light of the evidence, would be unfair to both parties to the contract.
The judgment is reversed, and judgment is now entered on the verdict in favor of the plaintiff for the amount of $81.94 and costs.