## Sarver's Estate.

Argued April 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Joseph Levy,* for appellants.

*Frank R. Coder,* for appellees.

OPINION BY BALDRIGE, J., July 15, 1938:

A petition of certain heirs of William Sarver was presented to the Orphans' Court of Somerset County for a decree to enforce the payment of their respective shares in a dower principal set aside in a partition proceeding.

William Sarver died, intestate, August 31, 1906, the owner of a certain tract of land located in Allegheny Township, Somerset County, containing 229 acres. He left to survive him a widow, five children, and four grandchildren, the children of a deceased daughter. A partition proceeding was instituted, and on February 24, 1908, the land was awarded to William V. Hillegass, in the right of his wife, Emma, a daughter of the decedent, for the sum of $3,216.60. Hillegass entered into a recognizance for the payment, in addition to the costs, of $2,003.27 to the heirs in one year, with interest, and to the widow, annually, of the interest on $1,001.63, and, at her death, of the principal to the heirs, and, further, to pay to Amanda Sarver, widow of Daniel Sarver, who died ten days after his father, the interest on $111.29, and, at her death, the principal to Daniel's heirs.

About a month after the recognizance was entered into, Hillegass paid to most of the heirs, including the

petitioners, their respective interests in two-thirds of the purchase money. A release was written, which included a schedule of the distribution of the fund among the widow and heirs, wherein it is stated, to wit:

"Whereas, William V. Hillegass, and the widow and heirs of said deceased, (and) prefer to discount their respective interests, and reduce the whole purchase money to a cash basis ...... We Hester Sarver, widow of Daniel Sarver, dec'd. and the children and grandchildren of William Sarver dec'd., do hereby acknowledge that we have this day had and received of and from William V. Hillegass, to whom the real estate of William Sarver, dec'd. ...... was decreed and awarded ...... the sums set opposite our respective names, to-wit: Hester Sarver, $......: Lucinda Crissinger, $333.88; to Elizabeth Miller, $333.88; Emma J. Hillegass, $333.88; Rosie Glessner, $333.88; John Hersh, $83.47; Edith Kerkenstein, $83.47; Elmer Hersh, $83.47; Effie Long, $83.47; Cora Ware, $55.64; Artie Sarver, $55.64; Rosie Sarver, $55.64, and Clarence Sarver, $55.64, Amanda Sarver ...... in full satisfaction and payment of the 1/3 dower interest in said tract of land, and of the two-thirds interest, payable in one year with interest, that is to say, in full satisfaction of payment of our entire share, purpart and dividend due, payable and coming to us and each of us, out of said real estate, in law or equity, now or to which we might be entitled at any time hereafter."

This paper was not signed by Hester Sarver, widow of the deceased, or by Amanda Sarver, widow of Daniel, and it will be noted that no amount was set opposite their respective names, nor did Lucinda Crissinger or Elizabeth Miller, children of the deceased, sign it, although these two daughters subsequently executed separate receipts for $333.88 as their individual shares in two-thirds of the purchase money, but they did not release their interests in the dower principal payable

upon the death of the mother. The body of this paper was in typewriting, but the amount mentioned as due each heir was written in ink. The total amount set opposite all the names of the heirs, including the $111.29 due the heirs of Daniel upon the death of his widow, is $2,003.27. This was the exact sum due for their two-thirds interest in the real estate sold, not including their shares in the dower principal. When the paper was drawn, no doubt the purpose of Hillegass was to pay the two widows and the heirs all their interest and to satisfy the recognizance; that would account for the phraseology. It is very apparent, as the widows and two of the children did not sign, that plan was not consummated. Certainly the figures do not represent correctly their full interest in the recognizance. Our conclusion, that this paper, when signed, was not intended to be effective as a full release, is confirmed by the subsequent action of Hillegass and his successors in title.

On February 24, 1909, Hillegass presented a petition to the court for a reduction of the amount of the recognizance which originally had been entered in the sum of $6,009.82, conditioned to secure Hester Sarver, the deceased's widow, her interest and the heirs their respective shares. The petition set forth, inter alia, as follows: "Your petitioner, having paid out the two-thirds interest of the heirs and the interest due the widows to this date and the costs of the proceedings, prays your Honor to change the aforesaid decree in so far as the amount and condition of the recognizance is concerned, directing that he shall enter into a recognizance in the sum of $2,226.64 condition to pay the widow, Hester Sarver, $60.09 on Feb. 24, 1910, being the interest on $1,001.64. and the same sum annually thereafter during her natural life and at her death pay the principal sum to the heirs and legal representatives of said William Sarver, Deceased."

The court granted the prayer and thereupon Hillegass and a surety entered into a recognizance conditioned for the payment of the annual interest to Hester Sarver and the principal sum of $1,001.64 to the heirs of William Sarver at her death. Amanda Sarver received annual interest until her death in March, 1936, at which time the principal is alleged to have become due and payable to the heirs of William Sarver. When Hillegass filed that petition he certainly did not entertain the opinion that the heirs had receipted for and released their respective interests in the dower.

William V. Hillegass died April 7, 1921, without recording the above-mentioned release, although the dower continued to remain on the record as an encumbrance upon the land. On March 2, 1927, all of his heirs, including the present appellants, joined in a conveyance of the property to Elmer J. Hillegass, one of the appellants, in consideration of $3,350, which contained the following provision: "Subject, however, to the payment by the grantee of the sum of $1,001.63, being the amount set aside in the estate of William Sarver, deceased, as dower, the interest of which is paid to Hester Sarver, widow, annually, during her natural life, and, at her death, the principal sum to the heirs of William Sarver, deceased." Garnet T. Hillegass, the other appellant, is recognized by all of the parties as a part owner of the property, but the record does not disclose when or how he acquired any title thereto.

The learned court below entered a decree directing the respondents to pay the petitioners, within thirty days, their respective shares of the dower principal, with interest from February 25, 1936, in the proportion as they are now owners of the real estate. This appeal followed.

We do not agree with the lower court's statement that the respondents pleaded payment and, therefore, the burden of proof rested upon them to show that fact.

The defense set up was not payment, but an executed release. We do concur, however, with its conclusion that the parties themselves place a construction upon the release as shown by the records, which clearly reveal the dower principal was unpaid, thus refuting the appellants' contention that the instrument, when executed, was intended as a full release of the appellees' respective interests in the recognizance. We might state here that the appellants do not claim the dower principal was, in fact, paid, nor does any reason appear for concluding that it was the intention of the appellees to forfeit and forego part of their patrimony.

As we understand the appellees' position, they are not attempting to set aside, change or reform the release on the ground that it was entered into by fraud, accident, or mistake, as appellants argue. They admit its validity for the purpose of releasing Hillegass from all further payment to them on account of two-thirds of the purchase money. They contended in the court below, as here, that a dispute has arisen over the interpretation of the release as to the dower principal, and they asked the court to construe it.

The appellants lay particular stress upon the express statements in that part of the release above quoted, to the effect that the parties executing it prefer to discount their respective shares and acknowledged full satisfaction and payment of all of their interests in the dower and released Hillegass from any further claims and demands. The words used, if taken alone, give support to the appellants' contention. But, in order to arrive at a proper interpretation of the release, it is necessary to consider the instrument in its entirety and keep before us the attending circumstances, and, particularly, the construction placed upon the writing by the parties themselves: *Williamson v. McClure,* 37 Pa. 402, 412; *Alcorn Combustion Co. v. Kellogg,* 311 Pa. 270, 166 A. 862. When that is done, we think any

doubt that might arise as to the parties' intentions vanishes.

It is a well-known rule that if the meaning of a writing is uncertain, the parties in interest may ask the courts to interpret it: *Frazier et al. v. Monroe et al.,* 72 Pa. 166. A written instrument is always open to explanation, even by parol or extrinsic evidence, where it is fairly susceptible of two constructions, or where its meaning is obscure or ambiguous: *Gould v. Lee,* 55 Pa. 99; *Centenary M. E. Church v. Clime,* 116 Pa. 146, 9 A. 163; *Chaplin v. Griffin,* 252 Pa. 271, 97 A. 409; 22 C. J. §1570.

Parol evidence, however, was not relied upon in this case. The very definite and certain record admissions of the appellants and their predecessor in title are to be considered, as they throw much light on this controversy. The well recognized rule is that if a written instrument may have two interpretations, the courts, in endeavoring to determine the intention of the parties, will follow the one which they put upon it by their own actions: *Gass' Appeal,* 73 Pa. 39; *Hill v. Freeport Waterworks Co.,* 40 Pa. Superior Ct. 592; *Fenner v. Smyth,* 62 Pa. Superior Ct. 538; *Com. v. Friedman (Rosenblum),* 121 Pa. Superior Ct. 591, 184 A. 672.

Taking into consideration the release, with all fairly deducible inferences attending its execution, and the subsequent written assertions of the owners of the property, to which we have referred, we think the construction of the release was for the learned court below and that it very properly concluded that it was not the intention of the appellees to release their interest in the dower principal.

Decree affirmed, at appellants' costs.