Schnee et al., Appellants, *v.* Elston et ux.

Argued December 5, 1929.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* with him *D. Arthur Magaziner,* for appellants.—The lease, and especially the option therein, gave to plaintiffs the benefit of fire insurance moneys on the exercise of the option to purchase subsequent to fire losses: Kerr v. Day, 14 Pa. 112; Frick's App., 101 Pa. 485; Siter's App., 26 Pa. 178; Bauer v. Hill, 267 Pa. 559; Phœnixville, Valley Forge & Strafford Ry. Co.'s App., 70 Pa. Superior Ct. 391; Kelly's Est., 6 Pa. D. & C. 770.

The stipulation in the equity proceeding did not affect plaintiffs' right to exercise the option and claim the benefit of the insurance moneys: New Orleans v. Gaines, 138 U. S. 595.

It is submitted: (1) That the option agreement contained in the lease operates, upon its exercise by the optionee, as of the date of the lease, and therefore the optionee is entitled to the benefit of the insurance moneys in place of the buildings; and (2) that the option, and the rights of the plaintiffs thereunder, are not affected by the stipulation or agreement of compromise in the equity proceeding to restrain the demolition of buildings and the construction of new buildings without the approval of defendants; and, therefore, (3) the judgment of the court of common pleas, dismissing the plaintiffs' petition for declaratory judgment, should be reversed.

*Theodore F. Jenkins,* for appellees.—The lease in question expressly negatives appellants' contention that appellants were entitled to the benefit of the fire in-

surance money, and there is no evidence of any waiver of such right.

It is useless to say in the face of this contract that the contract did not cover the question of the insurance money, because it was the payment of the insurance money on the erection of the building that the bill in equity was brought about and the insurance money was certainly mentioned or intended to be mentioned in the agreement of settlement, and the consideration for the contract was the mutual promises and agreements of the two parties and it was very definitely settled and ended: Fink v. Bank, 178 Pa. 154; Scranton Gas & Water Co. v. Weston, 57 Pa. Superior Ct. 355; Flegal v. Hoover, 156 Pa. 276.

OPINION BY MR. JUSTICE SIMPSON, January 6, 1930:

On March 31, 1927, Harry E. Elston, hereinafter called defendant, was the owner of the buildings and premises 58, 60 and 62 East Main Street, Norristown, Pa. On that day defendant leased them to plaintiffs for a term of ten years, the lease also giving the latter an option to purchase the properties in fee simple at any time during the term of the lease, for the price of $225,-000. It further provided that plaintiffs should "keep the buildings on the premises insured against loss by fire, in the amount of $87,500, said insurance to be made payable to [defendant, but] the premiums therefor to be charged to and paid" by plaintiffs, and in case of a total or partial destruction by fire plaintiffs agreed to rebuild or repair, and were to "be reimbursed by [defendant] to the amount of the insurance monies collected......[But] in the event that only a two story building is erected by [plaintiffs], at a cost less than the insurance money received by [defendant], the balance of insurance money remaining in the hands of [defendant], in excess of said cost, shall be retained by [him]. The plans for buildings shall be approved" by defendant.

This lease was duly acknowledged by defendant and his wife.

Plaintiffs insured the buildings as above provided; they were thereafter considerably damaged by fire and defendant collected, as insurance moneys, the net sum of $28,899. At that time plaintiffs thought they would rebuild the destroyed part, and hence had plans prepared and submitted to defendant, who, for reasons unimportant now, refused to approve them, and filed a bill in equity, the sole prayer for relief being that an injunction be granted to prevent plaintiffs from proceeding with the proposed building "until the plans [for the work to be done] are submitted in full to complainant and approved by him." This suit finally resulted in a stipulation, signed by both parties, stating, inter alia, "that the [plaintiffs] shall, as soon as practical, cause to be constructed a two story building in accordance with [certain] plans and specifications," defendant to pay the cost out of the insurance money and to "keep and retain any balance of said insurance funds remaining after the cost of construction, as aforesaid, for his own purpose."

Before any of the work was done, however, and while all the insurance money was in defendant's hands, plaintiffs decided they would exercise their option to purchase, and wrote to defendant, stating that they were advised they would, in that event, be entitled to have credited on the purchase price "the net amount received by [defendant] from the insurance companies as a result of the fire," and asked him whether or not he would credit it. He replied that he would not, and insisted that they reconstruct the building, claiming that he had the right so to do solely because of the above stipulation. Plaintiffs thereupon filed a petition for a declaratory judgment, setting up the above facts and their intention to exercise the option to purchase, and prayed the court to determine whether or not they were entitled to a "credit of the proceeds of insurance against the option

price." Defendant answered denying the right, the court below sustained his contention and dismissed plaintiffs' petition, whereupon they took the present appeal.

In view of defendant's refusal to allow the credit, it is a matter of no moment whether or not plaintiffs' original inquiry contained an express notice of their intention to exercise the option of purchase, and the hinted objection on this point is, therefore, dismissed.

That, aside from the stipulation, plaintiffs' contention would have to be sustained is no longer an open question. In Peoples Street Ry. Co. v. Spencer, 156 Pa. 85, 89, we said: "It is unimportant what name we apply to the relation of the parties......Whether technically vendor and vendee, mortgagor and mortgagee, or lessor and lessee, is immaterial. The nature of the relation is incontestable; appellant was the holder of the legal title, subject to an equity in the company. It is strongly argued for appellant that his interest at the time of the fire was an absolute fee simple title. But this is an error, it was not absolute. It was the legal title in fee, but subject to the equitable interest of the company, an interest in the land, capable of being specifically enforced, and good not only against the appellant but all others, creditors, purchasers or strangers, to whom......the company's possession gave notice. The only substantial question in the case is the date at which the company's equity became complete. The fire took place during the running of the term, the option to redeem was exercised after the fire had occurred. Did the company's interest begin to run only from the exercise of its option, or did it upon that event relate back for all purposes to the beginning of the transaction? We are of opinion that both principle and authority sustain the latter view. ......The insurance was for his [appellant's] protection, not to increase his profit; to keep up the sufficiency of his security while the loan lasted, or make good the value of his purchase if it became absolute. For that reason it was to be kept up by the appellee. If the latter

had exercised its option before the fire there could have been no question that the insurance money would have belonged to it. But the date of the fire makes no substantial difference, when, as was the case, the appellee elected to repay the loan and resume its title. On the happening of that contingency the appellant got his money with interest, which was all he was entitled to, while the appellee got back its land, lessened in value by the fire, but the loss compensated by the insurance money. The insurance was, in contemplation of law, for the benefit of whomever should be entitled when the option was exercised or expired by default."

This ruling is so clear, pertinent and equitable that nothing can profitably be added to it. It has never before been doubted or even questioned, and was cited with approval in Bauer v. Hill, 267 Pa. 559, 563. It is now reaffirmed. As a result, the only open point in the case is, was the right in plaintiffs to have the insurance money credited, taken away by their stipulation? It says that plaintiffs "*shall,* as soon as practical, cause to be constructed a two-story building" etc., etc. "Shall" must, of course, be construed as "shall" with respect to the subject-matter in contemplation when the stipulation was made, but does not apply to that which the parties were not considering. In Camden Safe Deposit & Trust Co. v. Eavenson, 295 Pa. 357, 363, we said: "The error of the court below consisted in wresting the words relied on from their subject-matter and obvious purpose. It is axiomatic that this can never be done; all contracts must be construed with reference to their subject-matter and obvious purpose, and, however general the language may be, their scope and effect are necessarily limited and controlled thereby; ex antecedentibus et consequentibus fit optima interpretatio; verba generalia restringuntur ad habilitatem rei vel personam: Codding v. Wood, 112 Pa. 371; Smith's Est., 210 Pa. 604; Silverthorn v. Silverthorn, 276 Pa. 579. In Com. v. Budd Wheel Co., 290 Pa. 380, where an earlier opinion of this

court was being construed, we said that 'controlling effect must be given to the subject-matter being considered when the language is used.' The same principle is applicable wherever the meaning of words, oral or written, is being considered, for only thus can it be known what the parties intended by their contract."

The "obvious purpose" of the bill in equity, and of the stipulation by which it was settled, was to secure to defendant a building, if one was erected, which would be according to plans approved by him. So far as appears, the option clause was not even thought of, much less altered. Where, as here, therefore, a stipulation is drawn to settle a controversy arising out of a bill in equity, filed for the sole purpose of compelling strict compliance with one of the terms of an antecedent written agreement between the parties, and neither the stipulation, nor the bill, nor anything said or done in the course of the proceedings, refers to any of the other clauses of that agreement, it is not reasonable to construe the stipulation so as to determine that the parties intended to impair, if not pro tanto to destroy, one of those other clauses, which was neither referred to nor bound up with the particular clause then being enforced. This unreasonableness becomes all the more apparent in view of the fact that a far more rational construction can be given to the paper. The word "shall," upon which alone appellee's contention is founded, imperative as it is in its proper sphere, is here too weak to carry the load placed upon it. The stipulation bristles with "shalls," which are conditional. For instance, certain architects "*shall* forthwith prepare plans and specifications," another *shall* be supervising architect etc., etc.; yet each such "shall" is determinable at the will of the person named. So, also, it is said that "no repair to the interior of the heater *shall* be made unless the same *shall* have been damaged as the result of the fire"; but this would not prevent plaintiffs, as lessees, from making needed repairs otherwise caused, but only prescribes that de-

fendant shall not be held liable for them unless the damage resulted from the fire. As a broad example: how few of us would say "thou shalt not kill," was intended to apply to the killing of an enemy in times of war.

Defendant further contends that the foregoing principle of construction is not applicable here, because, by the stipulation, he was to have any surplus of the insurance money, if all of it was not needed in the construction of the new building. But so he was under the lease, also, yet that would not have given him the right to object to plaintiffs' exercise of the option, with the necessary result that they would get the property as it was at the price named. The fire added nothing to defendant's rights, but only changed the form of the security he would have for the purchase price. If plaintiffs had gone on with the construction of the new building, according to the plans and specifications referred to in the stipulation, perhaps defendant would have received some part of the insurance money, though this is not averred in the record, nor was it stated at the argument. But this was conditioned on the erection of the building while defendant had an interest in it, not after his interest ceased. Quoad the stipulation, this contention is also governed by the principle to which we have adverted; all the "shalls" in the stipulation are conditioned, so far as defendant is concerned, upon plaintiffs erecting a building while defendant has title to the property, but after plaintiffs exercised their option, he had no standing to insist on the construction of any building whatever.

The judgment of the court below is reversed, and it is adjudged that plaintiffs are entitled, upon exercising their option to purchase, to have credited on the purchase price the amount of insurance money in defendant's hands.