## Alcorn Combustion Co. *v.* Kellogg Co., Appellant.

Argued April 24, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*George Wharton Pepper,* of *Pepper, Bodine, Stokes & Schoch,* with him *James A. Montgomery, Jr.,* for appellant.

*Ralph B. Evans,* with him *Benjamin O. Frick,* for appellee.

Opinion by Mr. Justice Simpson, May 23, 1933:

The Alcorn Combustion Company, hereinafter called "Alcorn," sued The M. W. Kellogg Company, hereinafter called "Kellogg," to recover a fixed sum defendant agreed to pay, during the minimum duration of a written contract between them, which contract. defendant cancelled, claiming the right so to do because plaintiff had breached a warranty forming part thereof. Plaintiff recovered a verdict and judgment and defendant appeals.

Three weeks were required for the trial of the case, and the resulting record of 1,696 printed pages furnishes abundant proof that many questions, both of law and fact, were raised and skillfully argued; most of them, however, passed out of the realm of controversy when the court below sustained the verdict of the jury. Evidently recognizing this, defendant's counsel say in their brief: "If appellant is wrong in stating that the only furnace warranted by the contract was one which contained a complete screen of carborundum extending the full length of the radiant section of the furnace, then he is out of court, because he is frank to admit that furnaces which contain little or no carborundum work very well. In fact, this is appellant's whole case." This, which was the pivotal point on the trial, is alike the beginning and the end of our necessary review of it.

Defendant also asserts in its brief that "the only change of any importance made in the furnaces [while the contract was in force], either by Alcorn or Kellogg was toward the gradual elimination of carborundum," finally resulting in "Alcorn's own Type E heater [which had five lineal feet of carborundum only, instead of twenty feet, as in the original furnace], about the success of which there was no dispute." It is thus admitted that, in the development of the process for which plain-

tiff had a patent, changes were made by both parties, finally resulting in a type which used carborundum, though not of "the full length of the radiant section," "about the success of which [type] there was no dispute." These admissions of appellant effectively answer much of its present contention.

The contract recites that plaintiff owns certain inventions covered by letters patent, "and has devised a type of radiant heat furnace, commonly known as the 'Alcorn Furnace,' for the practice of the invention aforesaid, and using for that purpose certain carborundum boxes, now being manufactured by the Carborundum Company of America, under letters patent" owned by it, which furnace and boxes defendant can use in its business; that plaintiff and defendant have agreed to *coöperate* in the manner hereinafter set forth in regard thereto, and therefore plaintiff appoints defendant "as its *agent for the sale and exploitation* of carborundum boxes *adapted for the practice of plaintiff's invention, covered by said letters patent, and any improvements thereon"*; this agency was to be exclusive, with certain exceptions not now important. Only two other paragraphs of the agreement need be cited: 1. (the warranty clause on which defendant relies) : "Alcorn further assures Kellogg that Alcorn Furnaces embodying the carborundum boxes aforesaid, as now constructed and operated, are practicable and commercially operable in connection with tube stills and oil cracking apparatus"; and 2. (the immediately succeeding paragraph) : "Alcorn agrees to collaborate with Kellogg in the working out of designs and specifications for Alcorn Furnaces for use in connection with various types of tube stills and oil cracking apparatus, and also in connection with the sale of said carborundum boxes and the installation and preliminary operation thereof, and to this end agrees to make available to Kellogg at its request the services of the engineers, draughtsmen and other experts."

How are we to construe that agreement? As it was prepared by or for defendant, its construction, if its meaning is involved in doubt, must be favorable to plaintiff: Coates v. Cotteral, 290 Pa. 237. Appellant in effect contends that the warranty paragraph should be interpreted as if it was a separate entity. This is never permitted, however; a contract is to be construed in all its parts, and every provision must be considered before the true meaning of any one of them can be determined: Hild v. Dunn, 310 Pa. 289. So, also, as is stated in that case at pages 292-3: "In Williamson v. McClure, 37 Pa. 402, 412, we said: 'The words of that clause would, if taken alone, bear the construction placed upon them, but the parties did not place them alone, but connected them with other essential provisions, and we must read them as they wrote them, and give them the effect, but no more than the effect, which they intended they should have.' To the same effect are Saltsburg Gas Co. v. Saltsburg Boro., 138 Pa. 250, 254, and Berkley v. Maxwell Motor Sales Corporation, 70 Pa. Superior Ct. 418, 422; and it is indeed but a necessary conclusion from the maxim ex antecedentibus et consequentibus fit optima interpretatio. There are, however, a few principles which must be steadily kept in mind, in determining which of the differing constructions of paragraph 6 is the correct one. 'An agreement is the assent of two minds to the same thing. It should be construed in the light of the facts and circumstances under which the parties contracted. These form a sort of context that may properly be resorted to as an aid in interpreting the contract, to the end that the objects and purposes of the parties may be carried into effect': Nimlet's Est., 299 Pa. 359, and cases cited therein at page 365. 'It is axiomatic that all contracts must be construed with reference to their subject-matter and obvious purposes, and, however general the language may be, their scope and effect are necessarily so limited and controlled': Schnee v. Elston, 299 Pa. 100, and cases cited therein at page 106: McFadden v.

Lineweaver & Co., Inc., 297 Pa. 278; verba generalia restringuntur ad habilitatem rei vel personam."

By applying the principles thus stated, much of the difficulty in the instant case will disappear. The question involved is not that suggested by appellant, for the trial judge told the jury that "at the time the contract was executed, it seems clear that the carborundum boxes, in which the oil or gas or other combustible material was burned to furnish the heat, extended the full length of the radiant section," and appellee took no exception to this. Nor is it necessary to decide whether or not the paragraph of warranty, if it stood alone, would compel the conclusion that plaintiff warranted that all the furnaces would contain "a complete screen of carborundum extending the full length of the radiant section," for this provision did not stand alone. The parties were dealing with a new invention, not yet fully developed—one which, if ultimately successful, might be exceedingly valuable—and, as already pointed out, the contract must "be construed in the light of the facts and circumstances under which the parties contracted." That the parties recognized this and contracted accordingly is conclusively shown by the fact that defendant, by the immediately preceding paragraph of the contract, became plaintiff's agent not only for the "exploitation of carborundum boxes adapted for the practice of plaintiff's invention, covered by said letters patent," but also for "any improvement thereon"; and also by the statement in the next paragraph of the contract, that the parties agree to collaborate "in working out designs and specifications for Alcorn Furnaces for use in connection with various types of tube stills and oil cracking apparatus, and also in connection with the sale of carborundum boxes, and the installation and preliminary operation thereof."

In two notable respects, appellant itself was the first to suggest such changes. For instance, at its suggestion, a flat hearth of carborundum was, at times, substituted for the carborundum boxes. It is contended by appel-

lant that this "did not change the principle of the invention, because the carborundum still completely screened the products of combustion from the radiant section." But this is not the point under consideration. Furnaces containing those changes were not "furnaces embodying the carborundum boxes......as now constructed and operated"—a strict compliance with which is substantially the whole tenor of appellant's argument. Nor were furnaces containing a second radiant section, also suggested by appellant, nor, indeed, any of the numerous changes which had to be made to adjust the Alcorn Furnace to plants already existing. Unless these changes were made, the Alcorn Furnace could not be used in such plants, and hence the parties "collaborated," as the jury have found, to change the Alcorn Furnaces to suit such plants, and, in practically all the instances referred to, the furnaces, as thus changed, were constructed by defendant itself. These changes, as to the plants to which they were applied, were improvements on the furnaces, and, under the terms of the contract, were to and did inure to defendant's benefit. Hence, under the contention now made, if the utilized improvements, made by agreement, had changed the furnaces from what they were at the time the contract was signed, plaintiff could not recover because it would have been a breach of the warranty clause, and if plaintiff had not allowed defendant to have the benefit of such improvements, there could be no recovery because, under the contract, defendant was entitled to have them. No court of justice would sustain such a conclusion, unless no other was possible. Here the conclusion itself is an impossible one, and hence the warranty clause must receive a different construction from that now urged upon us.

Upon this point, the trial judge charged that plaintiff could recover only in case it proved, to the jury's satisfaction, that any variance from the furnace, as it existed at the time of the making of the contract, was made by agreement between the parties, and the jury's finding for

plaintiff necessarily affirmed that all of the changes, of which complaint is now made, were made by agreement with defendant. Of this defendant surely cannot complain, especially as it expressly asserted at the trial that the difficulties encountered created "a situation where, as we contend, it is clear that the parties were collaborating together to overcome the objections in the original type of furnace, *and the warranty being a continuing thing, would apply, of course, to any type of furnace which was devised under this contract, with the consent of Mr. Alcorn."* Indeed, if the paragraph under consideration did not appear in the agreement, still defendant could not be heard to complain of a breach of warranty, where, as here, the changes which are alleged to have constituted the breach were made by agreement with defendant itself: W. T. Price, Inc., v. Robbins, 298 Pa. 568.

There is a great mass of conflicting evidence in the case upon three points (1) Were the Alcorn Furnaces "practicable and commercially operable?" (2) Were the difficulties which appeared in some instances due to faulty work on the part of defendant, or to defects in the invention? and (3) Were the changes made in the furnaces, as installed by defendant, so made under agreement between the parties, or because rendered necessary solely by reason of defects in the invention? The verdict of the jury resolves all of these points against defendant, and this fully answers its argument on this appeal. Indeed a review of all the evidence at the trial, oral as well as written, leads to the conclusion that appellant was seeking to escape liability, not so much upon the ground that the warranty was breached by a reduction in the quantity of carborundum used, as by establishing that the invention was valueless, as shown by the multitude of difficulties experienced, and for that reason alone no recovery should be allowed. This may have been good tactics for trial purposes, but it makes a poor record when a review is sought.

It may be added, though this is unnecessary in view of the conclusion stated, that the patent, upon which the contract is based, does not require that there shall be "a complete screen of carborundum extending the full length of the radiant section of the furnace"; nor is this contended for in any of appellant's letters, leading up to its cancellation of the contract, or in the letter of cancellation itself.

It follows that the record in this case establishes that, for the purposes of this appeal, "appellant is wrong in stating that the only furnace warranted by the contract was one which contained a complete screen of carborundum extending the full length of the radiant section of the furnace," and hence, following the rest of the first quoted language of its counsel, we must decide it "is out of court."

The judgment of the court below is affirmed.