Opinion by
 

 Ross, J.,
 

 This is an appeal by the defendant from a judgment entered in favor of the plaintiff by the court below in an action of assumpsit and submitted to the court on a case stated.
 

 The defendant since February 1944 has been the lessee of certain coal property in Fayette County on which he has developed and operated a coal mine. Sometime in 1945, the plaintiff and the defendant entered into an agreement under the terms of which the plaintiff furnished the labor, material, machinery and supplies to mine the coal and the defendant sold the coal, paid the royalty on it to the landowner and paid the
 
 *464
 
 plaintiff for Ms services. The mine is operated as a union mine and the employees are members of the United Mine Workers of America.
 

 While this contract was in effect, on May 1, 1946, a general strike was called by the United Mine Workers following which the President of the United States, by executive order, took possession of the coal mines, and on May 29, 1946, Secretary of the Interior Julius A. Krug, acting as Coal Mines Administrator, entered into a contract—known as the Krug-Lewis Agreement— with the United Mine Workers. This agreement established a new wage scale, a new rate of vacation pay, certain conditions of employment and, also, provided: “A welfare and retirement fund is hereby created and there shall be paid into said fund by the operating managers five cents per ton on each ton of coal produced for use or for sale.” The defendant had been designated by Krug as the operating manager of the coal mine involved in this case, and during the time in which this cause of action arose the government remained in possession of the mine.
 

 On August 15, 1946, the parties to this action entered into a new contract. This contract in which Wilson, the defendant, is designated as the party of the first part and Davis, the plaintiff, as the party of the second part, provides in part as follows: “(1) The party of the first part does hereby agree to hire said party of the second part as an independent contractor for the purpose of mining and removing said coal, and does hereby agree to pay said party of the second part for said services as follows: The gross sales price received for said coal at the point of delivery by the party of the first part to the . . . [landowner] . . . the brokerage, discount or other fees paid to the seller of said coal, any tax or other assessment imposed on the sale of coal by any Federal or State regulations, plus
 
 *465
 
 the sum of twenty-five (25$) cents for each ton of coal. . . . (2) The party of the first part shall be and at all times remain the producer of said coal and as such responsible for compliance with all of the State and Federal regulations relative to the mining and removal of coal, and as well, compliance with the provisions of the Office of Price Administration, Solid Fuels Administration, and all other agencies relating to the production and sale of coal. (3) The party of the second part agrees that he will furnish men, material, supplies, machinery and equipment of all kinds necessary to mine and romove said coal, and will deliver said coal at any point designated by the party of the first part. (4) The party of the second part agrees that he will carry Workmen’s Compensation insurance on all employes brought in said mine and will furnish to party of the first part a certificate of insurance that he will be solely responsible for the payment of the premiums thereon, that he will pay Socal Security and Unemployment Compensation taxes and in all manner and respects be the employer of the workers in said mine.”
 

 The question is whether under this contract the plaintiff or the defendant—as between themselves—-became obligated to pay the stipulated five cents a ton royalty as provided in the Krug-Lewis Agreement. This royalty is a production cost, it is imposed on coal produced. Under the terms of the contract, was the plaintiff obligated to pay it or was it assumed by the defendant?
 

 In the contract, the plaintiff Avas obligated to pay the wages of the employes, carry and, of course, pay for Workmen’s Compensation insurance on them, and pay the Social Security and Unemployment Compensation taxes. These, also, are production costs and they are specifically designated. It seems logical that if the parties intended that the additional production cost—
 
 *466
 
 royalty welfare payments—should be an obligation of the plaintiff, the parties would have so stipulated.
 

 The contract involved in this action was prepared by the defendant. At the time it was executed, the royalty payment into the welfare fund was an existing obligation of either the plaintiff or the defendant. The defendant in drawing the contract could have protected himself by inserting in it a provision that the plaintiff should pay this additional production cost. He chose not to do so and, therefore, presumably intended to assume that cost himself. This interpretation of the contract is strengthened by the well established principle that in case of doubt or ambiguity, a written contract should be interpreted against the party who has drawn it.
 
 Monessen Bank Mortgage Pool Case,
 
 350 Pa. 125, 38 A. 2d 15;
 
 Alcorn Cumbustion Co. v. Kellogg Co.,
 
 311 Pa. 270, 166 A. 862.
 

 Judgment affirmed.