## Dreslin Estate

*Duffy, McTighe & McElhone* and *William B. Koch,* for exceptants.

*Smith, Cahall & Aker, M. Paul Smith* and *Richard L. Grossman,* contra.

TAXIS, P. J., November 15, 1961.—The second account of Montgomery County Bank and Trust Company and John J. Shinners, Jr., executors, was examined and audited by the court on October 23, 1961.

The account shows a balance for distribution of $77,-375.75.

Allen G. Dormer presented a claim to the accountants in the sum of $553.17 plus interest from December 12, 1960. The claim was not admitted.

On June 8, 1959, the executors entered into a lease with Martin David, at that time owner of the business of the Forrest Avenue Pink Room Laundromat. The lease reads, in part, as follows:

"This agreement, made the 8th day of June, one thousand nine hundred and fifty-nine (1959), by and between the Montgomery County Bank and Trust Company and John J. Shinners, Jr., Executors of the Will of Robert G. Dreslin, deceased (hereinafter called Lessor), of the one part, and Martin David (hereinafter called Lessee), of the other part.

"Witnesseth that: Lessor does hereby demise and let unto Lessee all that certain property known as the Forrest Avenue Pink Room Laundromat, located at Forrest Avenue and Lafayette Street in the Borough of Norristown, State of Pennsylvania, to be used and occupied as an automatic laundry, and laundry and dry cleaning agency . . ."

The lease was prepared on a printed form. The following condition appears on the printed form under item 6 of the lease dealing with additional rent:

"(e) Lessee further agrees to pay as additional rent, if there is a metered water connection to said premises, all sewer rental or charges for use of sewers, sewage system, and sewage treatment works servicing the demised premises in excess of the yearly minimum of such sewer charges, immediately when the same become due."

Subsequent to June 8, 1959, the claimant and Seth S. Williams purchased the business from Martin David. On November 21, 1959, the lease was assigned to the new owners of the business. Thereafter Seth S. Williams sold his interest in the business to claimant.

During the month of December, 1960, the executors executed upon claimant's personal property located at his place of business for the sewer rental. Claimant paid the amount claimed by the executors for sewer rental under protest to avoid a constable's sale.

The present claim is for the amount paid under protest, counsel fees resulting from the execution and interest.

Both the executors and the claimant presented executed copies of the lease. On the copy presented by the executors, item 6(e) quoted above, is left standing in its printed form except for the words "in excess of the yearly minimum of such sewer charges," which are covered by typewritten X's. On the copy presented by

the claimant, the entire item 6(e) is covered by typewritten X's except for the words "Lessee further agrees to pay as additional rent, if there is a metered water connection to said premises."

It should also be noted that there is a misdescription of the situs of the premises. The premises demised are situated in West Norriton Township and not the Borough of Norristown as stated in the leases.

There are three possible solutions to the problem before the court:

(1) The lessee should pay the entire sewer rental due to West Norriton Township.

(2) The lessee should pay the amount of sewer rental which would be due if the demised premises were in the Borough of Norristown (this is considerably less than the sewer rental due West Norriton Township).

(3) The lessee should not pay any sewer rental.

If the original parties did intend that there should be some additional rent to cover sewer rental, they most likely intended to base that additional rent upon the sewer rental payable for the demised premises at its actual location. It would be unusual indeed to provide for additional rent on the basis of a sewer rental which would be due were the demised premises in another location. The misdescription is the result of inadvertence and should not affect the interpretation of item 6(e).

It cannot be argued that the misdescription induced claimant, to his detriment, to become assignee of the rights of the original lessee. It is clear from the claimant's testimony that he relied completely, insofar as the issue of sewer rentals is concerned, upon the provision in paragraph 6(e) as it appears in the lease produced by him. Therefore, the misdescription is immaterial and solution number 2 is unacceptable.

Solution number 3 is acceptable only if the claimant was justified in relying upon the provision in paragraph 6 (e) as it appears in the lease produced by him.

The lease produced by claimant is obviously an executed carbon copy. However, if a lease is executed in duplicate, both the landlord and the tenant retaining a copy, both copies are originals and alterations upon one copy do not affect the lease because the remaining copy is sufficient to sustain the contract between the parties: Dinkel v. DeGeorge, 43 Berks 21.

It is possible, of course, that claimant's copy of the lease was in its present form at the time of execution. However, it is a reasonable presumption that the parties would not have executed the copies of the lease unless they were identical.

However this may be, the copy of the lease produced by claimant obviously was changed after the original preparation. Such an alteration, when beneficial to the party offering the writing, casts a burden upon such party to explain the alteration: Bowman v. Berkey, 259 Pa. 327. See also, Cornog v. Wilson, 231 Pa. 281. This is especially true when the alteration appears suspicious. Bowman v. Berkey, supra.

The absence of any explanation concerning the alteration must be taken against claimant, and the court must assume that the alteration was made after the execution. This being the case, the proper solution to the problem before the court is number 1, and the lessee claimant by the terms of the lease should pay the amount of sewer rental due West Norriton Township. An assignee, though an innocent purchaser for value, has no greater rights than the previous holder: 6 Williston on Contracts, §1909; Gettysburg National Bank v. Chisolm, 169 Pa. 564; Miller Election Contest Case, 351 Pa. 469.

And now, November 15, 1961, this adjudication is confirmed nisi.

*Opinion Sur Exceptions*

TAXIS, P. J., January 18, 1962.—Claimant has filed exceptions to the adjudication dated November 15, 1961, contending, first, that the lease submitted by him is valid and that the executors must return to him the amount he paid under protest. He reasons that since both the lease presented by the executors and the lease presented by claimant were executed copies, they should have been given equal weight; that the auditing judge was in error in assuming that the executors' copy was the valid one.

The auditing judge did not arbitrarily assume that the executors' copy was the valid one. Inspection of the copy of the lease produced by claimant reveals that it obviously was changed after the original preparation. The party offering a writing with a suspicious alteration which works to his benefit has the burden of explaining the alteration. See Bowman v. Berkey, 259 Pa. 327.

Because of the alteration, the executors' copy of the lease is the best evidence of the terms of the true lease. Claimant has convinced the court that he did not alter the lease. However, this is not sufficient. Claimant should have explained the suspicious alteration. In the absence of such an explanation, the court will assume that the leases were identical when executed and that the alteration was made after execution.

As suggested by claimant, it is probable that the alteration was made by his assignor. As stated in the adjudication, an assignee, though an innocent purchaser for value, has no greater rights than the previous holder: 6 Williston on Contracts, §1909; Gettysburg National Bank v. Chisolm, 169 Pa. 564; Miller Election Contest Case, 351 Pa. 469.

Claimant contends, finally, that even under the executors' lease claimant was obligated to pay no more

than an amount equal to Norristown sewer rent; that the executors, who prepared the lease, mistakenly stated that the premises were located in the Borough of Norristown and, therefore, claimant should have to pay no more than an amount equal to Norristown sewer rent. This argument is based upon the principle that the construction of a contract should be made against the party who draws it: Brookbank v. Benedum-Trees Oil Company, 389 Pa. 151; Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270.

Claimant is not contending that he relied upon the misdescription of the location of the premises. Therefore, it is strictly a matter of interpretation of the true lease as represented by the executors' copy. The court concludes that if the original parties did intend that there should be some additional rent to cover sewer rental, they most likely intended to base that additional rent upon the sewer rental payable for the demised premises at its actual location. Indeed, the obligation is to pay charges for sewers "servicing the demised premises."

If the court were in doubt, the lease would have to be construed against the executors, who prepared it. However, even the misdescription of location of the premises does not affect the clear meaning of item 6(e) of the lease, which indicates that the lessee should pay "all sewer rental or charges for use of sewers." The lessee contracted to pay "all" such charges irrespective of the location of the property or the authority providing the service. The meaning of the contract is clear even when considered in light of the misdescription of the location of the premises.

The true terms of the lease are set forth in the executors' copy of the lease. The misdescription of the location of the premises does not affect the meaning of the obligation to pay for all sewer charges. The exceptions are dismissed.