Myers v. Sezov

*Edwin N. Popkin*, for plaintiffs.

*Arthur B. Walsh, Isaac S. Garb*, and *D. W. Van Artsdalen*, for defendants.

BECKERT, J., April 27, 1966.—On June 21, 1962, Charles Martin Myers, Jr. (Charles, Jr.) was a Boy Scout, and while attending a scout meeting, his right hand was injured as the result of being struck by an axe wielded by Bruce Sezov, a minor (Bruce). This scout meeting took place at the home of Peter and Irene Burghart. The scoutmaster of this troop was Leonard Sezov (Leonard), father of Bruce.

As a result of the alleged injuries sustained by Charles, Jr., the above captioned complaint in trespass was filed on January 17, 1964, naming, in addition to the above persons, defendant "Boy Scouts of America". An answer was filed thereto by Leonard and Bruce, in which they denied the allegation of the complaint without specific averments or denial, as permitted by Pennsylvania Rule of Civil Procedure 1045(a), and under new matter averred that the claim of Charles, Sr. and Rose, his wife, parents of Charles, Jr., was barred by virtue of a release signed by said parents as part of the "application to become a Boy Scout". This application, in part, provided:

". . . In consideration of the benefits derived from the membership, if accepted, we hereby voluntarily waive any claim against the local council or the National Council, the Boy Scout Troop, its chartered institution, and all leaders of the Boy Scouts of America, for any and all causes which may arise in connection with the activities of the above organization".

Preliminary objections were filed on behalf of the "Bucks County Council, Boy Scouts of America", and

we will first deal with these objections. The nature of the objections raise a question of jurisdiction and a demurrer. The thrust of the preliminary objections is that service of the complaint was made upon a scout executive of the Bucks County Council, Boy Scouts of America, and, therefore, made upon an organization not a party to this action. It is further contended that "Boy Scouts of America is a legal non-entity". The preliminary objections raise the following two questions:

1. Has the complaint named a party which has been served and which is legally before this court, and,

2. May plaintiff now amend the complaint to name the Bucks County Council, Boy Scouts of America, as defendant, after the statute of limitations has expired?

We find that both of these questions must be answered in the affirmative.

Pa. R. C. P. 1033 vests in the court the discretion, at any time, to permit plaintiff to correct the name of a party. Pa. R. C. P. 126 provides that the rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action and that the court may disregard any error or defect of procedure which does not affect the substantial right of the parties.

The above two rules can be invoked only where it is determined that a legal party is properly before the court. That is to say, that the right party is, in fact, in court as the result of a service of process, and it is merely the designation of that party which plaintiff is seeking to change. The test, as enunciated in Gozdonovic v. Pleasant Hills Realty Company, 357 Pa. 23, 29, and approved in Powell v. Sutliff, 410 Pa. 436, 438, was whether: " 'the right party was sued but under a wrong designation', in which event the amendment was permissible—or, whether 'a wrong party was sued and the amendment was designed to substitute another dis-

tinct party'—in which event the amendment was not permissible".

Plaintiffs argue that the Bucks County Council, Boy Scouts of America, is, in fact, defendant which they, plaintiffs, were intending to bring upon this record as a party defendant. There is merit to their argument. Paragraph 5 of the complaint sets forth that "Defendant, Boy Scouts of America, is a corporation with offices situate at 30 East Court St., Doylestown, Pennsylvania", and service of the complaint was made at that address upon a scout executive, Bucks County Council, Boy Scouts of America, and, therefore, plaintiff contends that a legal party is properly before the court.

The instant case is not the type of situation to be ruled by Saracina v. Cotoia, 417 Pa. 80, where the wrong person was named and served, but is akin to Powell v. Sutliff, supra, and Wright v. Eureka Tempered Copper Company, 206 Pa. 274, where the right person was served and the allowed amendment was merely to change the incorrect designation of the correct defendant.

We, therefore, overrule and dismiss defendant's preliminary objection.

In addition to the preliminary objections heretofore discussed, plaintiffs filed preliminary objections to the new matter of Leonard and Bruce, averring that if the language of the application heretofore recited was construed to be a release, it would be contrary to public policy, or, if it be a release, that it is not a release for personal injuries; that said defendants were not within its purview.

Plaintiffs have cited no authority for the proposition that the writing, if a release, should be declared invalid as being contrary to public policy; nor have plaintiffs presented to our attention any statute which will render this release void as against public policy, and our independent research has not persuaded us to so hold,

nor has lead us to discover any such statute. Pennsylvania cases have held that writings in the nature of a release, to be held invalid as contrary to public policy, apply in: bailment cases, Wendt v. Sley System Garages, 124 Pa. Superior Ct. 224; banks, Thomas v. First National Bank of Scranton, 376 Pa. 181; and common carriers, Turek v. Pennsylvania Railroad Company, 369 Pa. 341. Plaintiffs, by this argument, would have us place the Boy Scout organization in the same classification as banks, common carriers, etc. We are not prepared to do this, as membership in the Boy Scouts is limited to those individuals approved for membership, as well as to those within a certain age range, whereas the other agencies serve the public at large.

We, therefore, hold that in the absence of statute, a release of damages in futuro is valid and not violative of public policy except in that type of case heretofore mentioned. See Brush v. Lehigh Valley Coal Co., 290 Pa. 322; 31 P. L. Encyc. 271.

Plaintiffs further contend that the release, as pleaded, should not be construed as a release for personal injuries. We agree with plaintiffs in this regard, but by so agreeing do not see how plaintiffs' position is strengthened, but, in fact, believe that it is weakened. The writing under consideration is a writing signed by the parents of Charles, Jr. It, therefore, does not and cannot, from a legal point of view, release any rights, present or in the future, that may flow to Charles, Jr. If the writing has any efficacy, it is upon the derivative right of Charles, Sr. and Rose, his wife, parents of Charles, Jr., to recover for medical expenses allegedly flowing from Charles, Jr's. injuries. Counsel for defendant do not contend that this writing bars the claim of minor plaintiff, but to the contrary quite candidly recognizes that a parent may not give a binding release of a minor's claim. See Crew v. Bartels, 27 F. R. D. 5 (U. S. D. C. E. D. Penna).

As we construe the writing now before us, if a label is required, we are dealing with a written instrument in the nature of an agreement to release, as distinguished from a release itself; that is to say, a release of claims not yet in existence. An agreement to release that projects itself into the future by its very nature may give rise to legal relations that one or both parties may not have anticipated. Nevertheless, it does not necessarily follow that the parties are free to disregard the commitments and intendments of the agreement, even though unforeseen. See Daniels v. Bethlehem Mines Corporation, 391 Pa. 195, 203.

The intention of the parties is to be garnered from a reading of the entire writing: Minnotte Appeal, 411 Pa. 492. It is, therefore, for us to adopt the interpretation which under all of the circumstances of the case ascribes the most reasonable, probable and rational intention of the parties, bearing in mind the object which both parties were seeking to accomplish. See Perry v. Payne, 217 Pa. 252, 257.

The writing in question waives "any claim . . . for any and all causes which may arise in connection with the activities of the above organization". While the exact type of injury to Charles, Jr. may not have been foreseen, certainly an injury of the type suffered by minor plaintiff was within the orbit of thought of the parties to this writing. Boy Scouts are known to use dangerous instruments, such as axes, in the training they receive and on camping trips, and the injuries sustained by Charles, Jr. were ones which the parents could have anticipated and foreseen as within the realm of possibilities when they signed the Boy Scout application. There is no reason why an individual cannot surrender his individual claim and grant the right to do an act which otherwise would constitute a trespass as to him, if he so desires: Brush v. Lehigh Valley Coal Co., supra. We, therefore, do not feel that release of

potential financial loss to the parents resulting from their son's activities in scouting that may be incurred by them in the future renders the release invalid. While it may be a fine line, it must be remembered that this writing does not preclude the minor from seeking compensation for the alleged negligent act, but, if operative, prevents the parents from recovering for the money damages purportedly suffered by them as the result of the medical bills, etc., arising from this injury.

We parents of today have, perhaps unfortunately, shifted our parental tasks and responsibilities to organized groups. The managers and coaches of our Little Leagues replace the father and son catch in the backyard; the Pop Warner football teams relieves us of buying football equipment and teaching the game; the Scouts, both girl and boy, teach, in part, a multitude of fields that were either the chore of the parent or were left untaught. For this service, the scouting organization has the right not to be harassed by litigation of this nature on the part of parents for whom they were substituting.

We, therefore, conclude that it was the intention of Charles, Sr. and Rose to waive their claims for medical damages arising not only from actual wounds, but from tick bites, burnt hands, bruised knees and any other unforeseen injuries arising from the active program which they had delegated and placed in the hands of this substituted parent. Immediately following the words of the application heretofore quoted appears the following pertinent language.

"As parents we understand that the Boy Scouting program is an active one for our son".

We are not unmindful of the myriad of cases to the effect that doubtful language in a written instrument is to be construed against the party who drew it: Home Builders of Mercer County, Inc. v. Dellwood Corporation, 379 Pa. 255; Alcorn Combustion Co. v. Kellogg

Co., 311 Pa. 270; but we fail to see doubtful language in this application. Nor are we unmindful that instruments which tend to lessen legal rights must spell out those intentions with the greatest particularity: Dilks v. Flohr Chevrolet, 411 Pa. 425. If we were now being called upon to construe this instrument to preclude recovery of the minor on the grounds that the "release" absolved the defendants of negligence, we would not do so. We construe it merely as it reads pertaining to the parents of Charles, Jr. Reference to the Boy Scout application reveals that the application itself is contained on one sheet of paper, and the exculpatory clause in issue can be found in the face of the application under the paragraph heading "Approval by Parents or Guardians". In addition to the exculpatory clause, there are approximately 19 sentences contained within the above paragraph heading. The writer is of the conclusion that in view of the paragraph heading and the brevity of the statements under said paragraph heading, the exculpatory clause was sufficiently clear. Further, the wording of the clause was such that the intent by the Boy Scout organization to obtain immunity from all claims was not doubtful or ambiguous.

As a final question, plaintiffs contend that the agreement to release does not inure to the benefit of Bruce and Leonard. We agree with plaintiffs as to Bruce, but not as to Leonard. We make this distinction on the basis of the wording of the application, which, as previously set forth, states in relevant part: ". . . we hereby voluntarily waive any claim against . . . all leaders of the Boy Scouts of America for any and all causes which may arise in connection with the activities of the above organization". Leonard is a scoutmaster who was to preside over the Boy Scout patrol meeting held on the day of the accident (paragraph 11(e), (j), (k) of plaintiff's complaint). In such capacity, he, Leonard, comes within the above cited portion of the application

in that he was a leader of a Boy Scout troop in connection with the activities of the above organization at the time the accident occurred. However, Bruce is a Boy Scout and not one of the leaders of the organization, and thus he does not come within the scope and protection of the agreement to release as contained in the application.

Therefore, in accordance with the foregoing, we enter the following

ORDER

And now, April 27, 1966, defendant's, Bucks County Council, Boy Scouts of America's, preliminary objections are overruled and dismissed. Plaintiffs' preliminary objections to defendants Bruce Sezov's and Leonard Sezov's new matter are overruled and dismissed as to Leonard Sezov only and are sustained and affirmed as to Bruce Sezov. Leave is granted to plaintiffs and to defendant, Bucks County Council, Boy Scouts of America, to file responsive pleadings within 20 days herefrom.